IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. 8:09CV238 |
| ) | |
| RICHARD WARREN TINNELL & ) | Bankruptcy No. 09-80160 |
| SHANNON MARIE TINNELL, ) | Chapter 13 |
| ) | |
| Debtors. ) | |
| _____ ) | MEMORANDUM OPINION |
| ) | |
| STATE OF NEBRASKA, ) | |
| DEPARTMENT OF HEALTH AND ) | |
| HUMAN SERVICES, ) | |
| ) | |
| Creditor-Appellant, ) | |
| ) | |
| vs. ) | |
| ) | |
| RICHARD WARREN TINNELL & ) | |
| SHANNON MARIE TINNELL, ) | |
| ) | |
| Debtors-Appellees. ) | |

This matter is before the court on appeal from a memorandum and order issued on June 12, 2009, by the United States Bankruptcy Court for the District of Nebraska[1] (the "Bankruptcy Court") confirming Debtors Richard Warren Tinnell's ("Richard") and Shannon Marie Tinnell's ("Shannon") (collectively "Appellees") Chapter 13 Plan (the "Plan") over an objection filed by the State of Nebraska, Department of Health and Human Services ("DHHS"). DHHS filed this appeal challenging the Bankruptcy Court's disposition of DHHS's objection to the Plan, and Bankruptcy Court's subsequent confirmation of the

---

[1] The Honorable Thomas L. Saladino, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

Plan. DHHS has elected to have the appeal heard by the District Court. (Filing No. 4.) The matter has been fully briefed[2] and is ripe for decision by this Court.[3]

## JURISDICTION

This Court has jurisdiction over appeals from final judgments of the bankruptcy court pursuant to 28 U.S.C. § 158(a). *See In re Gaines*, 932 F.2d 729, 731 (8th Cir. 1991). The confirmation of a plan, including the events and rulings leading to confirmation, act as a final order over which the appellate court has jurisdiction. *In re Zahn*, 526 F.3d 1140, 1143 (8th Cir. 2008).

## FACTUAL AND PROCEDURAL BACKGROUND

The Appellees filed a voluntary joint bankruptcy petition under Chapter 13 of the Bankruptcy Code on January 24, 2009. (Filing No. 3-2 at 1.) On February 4, 2009, Appellees submitted their Plan to the Bankruptcy Court for confirmation. (Bankruptcy Docket[4] No. 5.) The terms of the Plan provided solely for payment of secured debt owed on a vehicle. (*Id*. at 3.) DHHS previously had filed a proof of claim against Shannon for $1,223 representing prescription medicine that DHHS provided to Richard. (Bankruptcy Claims Docket, Proof of Claim, Claim No. 10-1.) DHHS objected to the Plan because it failed to include its claim. (Bankruptcy Docket No. 22.) DHHS reasoned that the claim

---

[2] (Filing Nos. 10, 12, and 13.)

[3] The Court has determined that oral argument will not be allowed as "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Fed. R. Bankr. P. 8012.

[4] All references to the "Bankruptcy Docket" are to Case No. 09-80160 of the United States Bankruptcy Court for the District of Nebraska.

against Shannon was a domestic support obligation ("DSO") entitled to priority and nondischargeable under the Bankruptcy Code. (*Id*. ¶¶ 2-3.)

The Bankruptcy Court scheduled a hearing on May 11, 2009, to address the Plan and DHHS's objection to confirmation. (Bankruptcy Docket No. 25.) The Bankruptcy Court's notice for the hearing required that affidavit evidence be submitted to the court by May 6, 2009. (*Id*.) DHHS submitted the Affidavit of Lynette Wells ("Wells Affidavit"), the custodian of records regarding the medicine DHHS provided to Richard. (Bankruptcy Docket No. 27.) The record shows that Appellees did not submit any evidence by the May 6, 2009, deadline. Wells's Affidavit indicates that, at Richard's request, DHHS approved the provision of medication for Richard through the Norfolk Regional Center ("NRC"). (*Id*. ¶ 2.) NRC provided medication to Richard in January, March, and May of 2007. (*Id*.) The Wells Affidavit cited the Nebraska Cost of Patient Care statutes and then concluded that DHHS's claim against Shannon was established in accordance with applicable Nebraska law. (*Id*. ¶ 3.)

During the hearing, Shannon protested the status and validity of DHHS's claim because DHHS did not show in the proof of claim or in Wells's Affidavit how it determined Shannon's liability. (Bankruptcy Docket No. 54, Transcript of Hearing, 2:24-3:2, 8:2-7, 9:13-16.) DHHS responded that state statutes cited in Wells's Affidavit provided the basis for its claim. (*Id*. at 4:7-24.) When asked how Shannon became liable for the medicine provided to Richard, counsel for DHHS responded that the state statutes specifically provided for liability of qualifying relatives. (*Id*. at 9:20-10:5.) Because the Bankruptcy Court was "not sure how [liability for medicine provided to Richard] reaches Shannon," it

3

permitted Shannon to respond to the statutory arguments presented at the hearing and in Wells's Affidavit.  (*Id*. at 10:6-18.)

As part of Appellees' response, Shannon affirmed that during the time DHHS provided treatment and medication to Richard, she and Richard were physically separated. (Bankruptcy Docket No. 43, Affidavit of Shannon Tinnell, ¶ 2.)  She stated that during that time, she worked in a hospital, earning a $23,000 annual salary to support herself and the Tinnells' two children.  (*Id*. ¶ 3.)  She also stated that the only document she received relating to DHHS's claim was a statement of charges.  (*Id*. ¶¶ 4, 5.)  When she contacted DHHS about the statement, a DHHS representative allegedly told her that she had received it by mistake and the error would be corrected.  (*Id*. ¶ 4.)  Shannon never requested financial information, nor was she provided any information as to how DHHS determined her liability.  (*Id*. ¶ 5.)

The Bankruptcy Court overruled DHHS's objection.  (Bankruptcy Docket No. 46 at 1.)  The Bankruptcy Court reasoned that no evidence existed in the record regarding how DHHS reached its determination that Shannon was liable.  (*Id*. at 4.)  Therefore, the Bankruptcy Court ruled that the record did not support DHHS's position.  (*Id*. at 5.)  DHHS appealed the Bankruptcy Court's decision and elected to have the district court hear the case.  (Filing Nos. 1, 4.)

## STANDARD OF REVIEW

When a judgment of the bankruptcy court is appealed to the district court, the district court acts as an appellate court.  *Parks v. Anderson,* 406 B.R. 79, 87 (D. Kan. 2009); *See also* Fed. R. Bankr. P. 8013. The district court reviews the bankruptcy court's factual

findings for clear error, and its conclusions of law *de novo*. *In re Falcon Products, Inc.*, 497 F.3d 838, 840-41 (8th Cir. 2007). The issues before this Court are the Bankruptcy Court's interpretation of the Bankruptcy Code and Nebraska law. These are issues of law subject to *de novo* review. *See In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000).

## DISCUSSION

The issues on appeal are whether the Bankruptcy Court erred in overruling DHHS's objection to confirmation and whether it erroneously confirmed Appellees' Chapter 13 Plan. DHHS attached additional evidence to its brief that was not included in the record on appeal, so the Court must first determine whether it may consider such evidence. The Court will then address whether DHHS established its claim as a DSO and whether the Court must afford presumptive validity to DHHS's proof of claim. Last, the Court will consider whether the Bankruptcy Court erred in confirming the Plan.

**I.    Evidence on the Record**

The record in a bankruptcy case on appeal to the district court is governed by Federal Rule of Bankruptcy Procedure 8006. The appellant bears the burden of demonstrating error in the record. *In re Pepper*, 339 B.R. 756, 760 (B.A.P. 10th Cir. 2006). Rule 8006 does not permit evidence to be added to the appellate record if it was not part of the record considered by the bankruptcy court. *In re CPDC, Inc.*, 337 F.3d 436, 443 (5th Cir. 2003). If evidence was not considered by the bankruptcy court in reaching its decision, it should not be included in the record on appeal. *In re Nat'l Century Fin. Enterprises*, 334 B.R. 907, 917 (Bankr. S.D. Ohio 2005); *see also In re Gen. Dev. Corp.*, 84 F.3d 1364,

1369 (11th Cir. 1996) (supplementing the record on appeal allowed only for documents considered by the bankruptcy court).

In the present case, the parties each submitted a designation of record on appeal in compliance with Rule 8006. DHHS also submitted, attached to its brief, several letters[5] allegedly sent to Shannon between February and August of 2007. These letters are not listed in DHHS's designation of record, and were not considered by the Bankruptcy Court in reaching its decision. Thus, the letters are not part of the appellate record and will not be considered on appeal.

## II.   Compliance With Nebraska Law

DHHS claims that Shannon is liable for the cost of care and medicine provided to Richard by the State of Nebraska. DHHS claims Shannon's liability is a DSO and the Bankruptcy Court erred by confirming the Plan which failed to provide for full payment of DHHS's DSO. Claims for DSOs are given first priority under 11 U.S.C. § 507(a)(1).[6] DSOs

---

[5] DHHS purportedly offered the letters to rebut Shannon's claims that DHHS never contacted her for financial information. Presumably they are offered to show Shannon failed to respond to these requests and DHHS was therefore entitled to consider her lack of response as an admission of liability for the cost of Richard's medications.

[6] Section 507(a)(1)(A) states:
   (a) The following expenses and claims have priority in the following order:
   (1) First:
   (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and

are also excepted from discharge under § 523(a)(5) and § 1328(a)(2).  Four elements must be met for an obligation to be a DSO under the Bankruptcy Code.  *In re Forgette*, 379 B.R. 623, 625 (Bankr. W.D. Va. 2007).  A DSO must be:

> (1) owed to or recoverable by a governmental unit; (2) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated; (3) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of an order of a court of record or *a determination made in accordance with applicable nonbankruptcy law* by a governmental unit; and (4) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

*Wisconsin Dept. of Workforce Dev. v. Ratliff*, 390 B.R. 607, 613 (E.D. Wis. 2008) (emphasis added).

The third requirement is the only contested element in this case.  Appellees contend that DHHS failed to make its determination in accordance with applicable nonbankruptcy law.  DHHS argues that it complied with nonbankruptcy law and that the Bankruptcy Court should have accepted its Proof of Claim and the Wells Affidavit as *prima facie* proof of a DSO.  The Bankruptcy Court concluded that DHHS had not met its burden of proving its obligation was a qualifying DSO under Nebraska law.  This Court agrees.

DHHS has not shown that it complied with applicable nonbankruptcy law in finding Shannon liable for the medicine and treatment provided to Richard.  State-run medical facilities may recover the costs of care from relatives of a patient when the patient is unable to pay.  Neb. Rev. Stat. § 83-364 (Reissue 2007).  In assessing liability to a

---

distributed in accordance with applicable nonbankruptcy law.

patient's relative, the state must consider the relative's ability to pay. Neb. Rev. Stat. § 83-366 (Reissue 2007); *see also In re Guardianship of Gaube*, 707 N.W.2d 16, 28 (Neb. App. 2005). To determine the relative's ability to pay, the state must consider "the relative's taxable income reportable under Nebraska law, and the patient's length of care and treatment." Neb. Rev. Stat. § 83-369 (Reissue 2007). The state must, at a minimum, request financial information from the relative including a financial questionnaire and a copy of the relative's state tax return. 202 Neb. Admin. Code § 1-005 (2003). When a relative willfully fails to furnish the information requested, the relative may be presumed able to pay the entire cost. Neb. Rev. Stat. § 83-370 (Reissue 2007).

DHHS had several opportunities to show that it complied with the statutory requirements, but failed to make such a showing. In support of its objection to confirmation, DHHS submitted the affidavit of Lynette Wells, a trust officer in the DHHS Financial Responsibility Office and custodian of the records regarding DHHS's claim against the Tinnells. In her affidavit, she stated:

> Debtor Shannon Marie Tinnell's liability for the medicine provided by [Norfolk Regional Center] to her husband Richard Warren Tinnell in 2007 has been established by DHHS in accordance with Nebraska's Cost of Patient Care statutes at Neb.Rev.Stat. section 83-863 through Neb.Rev.Stat. section 83-380.01 and state regulations at 202 Nebraska Administrative Code section 1-001 through section 1-013. Pursuant to that state law, DHHS determined that Debtor Shannon Marie Tinnell was liable for the full cost of the medicine provided to Debtor Richard Warren Tinnell by [Norfolk Regional Center] in 2007.

(Wells Aff. ¶ 3.)

The affidavit does not otherwise disclose how DHHS arrived at its conclusion, only that it did so in accordance with "state law." Similarly, at the objection hearing, DHHS provided no information as to how it determined Shannon was liable for Richard's

medications, other than to identify the statutes that provide for liability. No evidence in the record suggests that DHHS complied with the statutory requirements by requesting Shannon's tax return or financial documents. Nothing in the record shows when such a determination occurred. Finally, the record does not support a conclusion that Shannon willfully failed to respond to DHHS's requests.[7] DHHS's briefs to this Court merely point to the statutes that provide the basis for DHHS's claim. DHHS has not shown that it met the requirements of Nebraska law in determining Shannon's liability other than to state that it complied with the applicable statutes. Bare assertions of compliance with the law are insufficient to establish that DHHS properly assessed Shannon's liability. Accordingly, DHHS failed to show that its determination was made in accordance with Nebraska law and failed to prove the third element for establishing a DSO.

## III.   Presumptive Validity

DHHS also claims that because Shannon failed to present evidence at the May 11, 2009, hearing, the Bankruptcy Court was required to accept DHHS's claim as a valid DSO. In support of this assertion, DHHS cites Federal Rule of Bankruptcy Procedure 3001(f)[8] and 11 U.S.C. § 502(a), stating that a validly submitted claim is deemed allowed unless a party of interest objects. However, "[t]he Rules do not create an evidentiary presumption that properly filed claims are entitled to priority or secured status simply because such

---

[7] This appears to be the purpose of the letters attached to DHHS's brief. As discussed above, the Court will not consider the letters on appeal. In any case, the letters do not establish Shannon's willful failure to respond or her liability for the expense of Richard's medications.

[8] Rule 3001(f) states: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

status is asserted." *In re Hack*, No. 08-72553, 2009 WL 1392068, at *6 (Bankr. C.D. Ill. May 14, 2009); *see also In re Cardinal Indus. Inc.*, 151 B.R. 833, 836 (Bankr. S.D. Ohio 1992). The burden of proving priority is a matter of substantive law and that burden falls on the creditor. *See Raleigh v. Illinois*, 530 U.S. 15, 20-21 (2000) (the substance of a claim includes its burden of proof).

DHHS argues for the first time on appeal that its claim was entitled to priority because its proof of claim was properly filed. Appellees never formally objected to the validity or amount of DHHS's claim. However, the presumptive validity of DHHS's claim does not extend to the claim's status. DHHS is still required to establish its priority status under the substantive law creating the alleged DSO, which DHHS failed to do. Therefore, DHHS's proof of claim does not conclusively prove that its claim is a DSO.

### III.     Admissibility of Appellee's Response and the Affidavit of Shannon Tinnell

Because DHHS failed to show how it determined Shannon's liability for Richard's care and medication, the Court need not address the propriety of Shannon's response and affidavit following the objection hearing.

### IV.     Confirmation of the Plan

The Bankruptcy Court properly confirmed Appellees' Chapter 13 plan. Federal Rule of Bankruptcy Procedure 3020(b)(2) requires the court to rule on confirmation after notice and a hearing. Rule 3020(b)(2) also permits the court to determine that the plan meets the requirements for confirmation without a hearing where no objection has been made. After notice and a hearing, the Bankruptcy Court determined that DHHS's objection to

confirmation was unfounded. No other parties with standing submitted an objection to Appellees' plan. Accordingly, the Bankruptcy Court properly confirmed the Plan.

## CONCLUSION

For the reasons stated above, the judgment of the Bankruptcy Court will be affirmed. A separate Order and Judgment will be entered in accordance with this Memorandum Opinion.

DATED this 10th day of December, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Court